iCommLaw
ANITA TAFF-RICE, SBN 186039
1547 Palos Verdes #298
Walnut Creek, CA 94597
Telephone:  (415) 699-7885
Facsimile:  (925) 274-0988
Email: anita@icommlaw.com
*Attorneys for AVX Networks*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

AVX NETWORKS

*Plaintiff,*

v.

CALIFORNIA PUBLIC UTILITIES
COMMISSION; MARIA ELLIS, in her
individual capacity and her official capacity as
Director of Broadband Initiatives at the
California Public Utilities Commission; JOHN
REYNOLDS, DARCIE
L. HOUCK, KAREN DOUGLAS,
MATTHEW BAKER, and CHRISTINE
HARADA, in their official capacities as
Commissioners of the California Public
Utilities Commission

*Defendants.*

CASE NO. _____

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF,
REINSTATEMENT OF FFA AWARD,
REIMBURSEMENT OF EXPENSES AND
DAMAGES**

Plaintiffs AVX Networks ("Plaintiff" or "AVX"), by and through undersigned counsel,

bring this Complaint against Defendants California Public Utilities Commission ("CPUC" or

"Commission"), Maria Ellis in her official capacity as Director of Broadband Initiatives, and

John Reynolds, Darcie Houck, Karen Douglas, Matthew Baker and Christine Harada in their

official capacities as Commissioners of the California Public  (collectively, "Defendants"),

COMPLAINT

1

and allege as follows: alleges, on knowledge as to its own actions, and otherwise upon information and belief, as follows:

## I.    NATURE OF THE ACTION

1.    This action arises from a California Public Utilities Commission ("Commission") staffer's unilateral and ultra vires termination of a $37,571,833 Federal Funding Account grant award ("FFA Award") to Plaintiff, effected without notice, without an opportunity to cure alleged documentation deficiencies, and without any formal Commission decision authorizing termination.  (Exhibit 1 – Termination Letter).

2.    The FFA program was established by California Senate Bill 156 to allocate $2 billion in federal American Rescue Plan Act ("ARPA") funds for last-mile broadband infrastructure serving unserved and underserved communities.

3.    On December 18, 2025, the CPUC adopted Resolution T-17896 approving Plaintiffs' application for FFA grant funding for a fiber submarine cable project to connect Catalina Island with the mainland of California at two landing sites.

4.    The FFA Award would serve 1,555 unserved households, 55 businesses, and 7 anchor institutions.

5.    On July 7, 2026, Defendant Ellis, under her own signatures and with no formal authorization from the Commission, issued a "Notice of Termination" purporting to terminate the FFA Award effective July 17, 2026, based on alleged documentation deficiencies in a reimbursement request.

6.    The termination violated Plaintiffs' federal constitutional right to due process, the explicit procedural requirements of Commission Decision No. 22-04-055 implementing the FFA program, federal ARPA Coronavirus State and Local Fiscal Recovery Fund ("SLFRF") regulations at 31 C.F.R. Part 35, and federal administrative requirements at 2 C.F.R. Part 200.

7. The termination was effected by staff notice alone, without the ten-day written notice required by the FFA Program Rules, without specifying curable deficiencies, without affording Plaintiffs an opportunity to respond or cure, and without the formal Commission resolution required by CPUC Decision 22-04-055 Section 17.

8. Plaintiffs have incurred substantial project expenses in reasonable reliance on the rules and procedures in Decision No. 22-04-055 and seek declaratory relief, injunctive relief reinstating the award, reimbursement of documented expenses, and damages.

## II.  JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights jurisdiction). Plaintiffs' claims arise under the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, 31 C.F.R. Part 35, and 2 C.F.R. Part 200.

9. This Court has supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367.

10. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants conduct official business in this District and because the events giving rise to this action occurred in this District.

11. This Court has authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201–2202 and Federal Rule of Civil Procedure 57.

## III.  PARTIES

12. Plaintiff AVX Networks is a California telecommunications corporation with a Certificate of Public Convenience and Necessity issued by the CPUC, authorized to provide broadband Internet service in California.

COMPLAINT

3

13. Defendant California Public Utilities Commission is a state agency of the State of California responsible for regulating public utilities and administering the FFA grant program pursuant to California Public Utilities Code § 281 and CPUC Decision 22-04-055.

14. Defendant Maria Ellis is sued in her official capacity as Director of Broadband Initiatives of the CPUC Communications Division and in her individual capacity. She signed the award letter dated December 29, 2025, and the improper termination notice dated July 7, 2026.

15. Defendants John Reynolds, Darcie Houck, Karen Douglas, Matthew Baker and Christine Harada are sued in their official capacities as Commissioners of the California Public Utilities Commission. The Commissioners are charged with implementing the FFA program and ensuring compliance with state and federal law when awarding FFA funds.

---

## IV.  STATEMENT OF FACTS

### A.  The FFA Program and Federal Requirements

17. On March 11, 2021, President Biden signed into law the American Rescue Plan Act of 2021, Public Law 117-2, which established the Coronavirus State Fiscal Recovery Fund ("SLFRF") and appropriated funds for states to deploy last-mile broadband networks.

18. The U.S. Treasury Department issued a Final Rule effective April 1, 2022, codified at 31 C.F.R. Part 35, governing the use of SLFRF funds and requiring recipients to administer the funds consistent with federal requirements including 2 C.F.R. Part 200 (Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards).

19. On July 20, 2021, Governor Newsom signed Senate Bill 156 into law, creating the Federal Funding Account within the California Advanced Services Fund and allocating $2 billion in ARPA funds to deploy last-mile broadband infrastructure to unserved and underserved communities.

20. California Public Utilities Code § 281(n) directs the Commission to implement the FFA program "consistent with Part 35 of Title 31 of the Code of Federal Regulations and any conditions or guidelines applicable to these one-time federal infrastructure moneys."

21. On April 21, 2022, the CPUC adopted Decision 22-04-055 establishing the rules and guidelines for the FFA grant program, codified in Appendix A ("FFA Program Rules"). (Exhibit 2 – D.22-04-055 and Appendix A).

22. There is no rule or statement in D.22-04-055 authorizing the termination of an FFA award because Commission staff have questions about or objections to some requested reimbursements.

**B.  FFA Program Rules Governing Termination**

23. Section 17 of the FFA Program Rules, titled "Execution and Performance," provides that "[s]hould the recipient or Contractor fail to commence work at the agreed upon time, [sic] is not following the project plan in a reasonable manner, the Commission, upon ten days written notice to the FFA recipient, reserves the right to terminate the award."

24. Section 17 further provides that "[i]n the event that the FFA recipient fails to complete the project, in accordance with the terms of approval granted by the Commission, the FFA recipient must reimburse some or all of the FFA funds that it has received."

25. Section 17 states that "Communications Division Staff will notify the applicant of intent to prepare for Commission approval, a draft resolution that would rescind a FFA grant due to nonperformance."

26. These provisions establish mandatory procedural protections before termination: (1) ten days' written notice, (2) specification of deficiencies, (3) opportunity to cure, and (4) formal Commission resolution authorizing termination.

27. The FFA Awardee Administrative Manual, updated July 2025, provides that "[i]f the awardee fails to complete the project in accordance with the terms of approval ordered by the Commission, the awardee will be required to reimburse some or all of the FFA funds that it has received."

28. The Manual further provides that awardees "must notify the Commission as soon as they become aware that they may not be able to meet project deadlines" and that "[g]rant payments may be withheld or the grant may be terminated if the awardee does not comply with any of the requirements."

## C. AVX's Application and Award

29. On June 2, 2025, Plaintiffs submitted a joint application for FFA last-mile grant funding for the "Digital Equity for Coastal and North Orange County and Catalina Island" project.

30. The proposed project would deploy fiber-to-the-home broadband infrastructure on Catalina Island, including approximately 69 miles of subsea fiber optic cable connecting the island to the mainland and approximately 46 miles of terrestrial fiber.

31. The project would serve 1,185 total locations (1,127 baseline + 54 post award additions + 4 CAIs).in Avalon, other populated areas of Catalina Island, and Huntington Beach.

32. The application's estimated project costs comprised direct costs of $35,591,843.63, indirect costs of $962,458, and administrative costs of $650,000.

33. The application included extensive supporting documentation including detailed deployment schedules, permit identification, financial qualifications, project viability

forecasts, letters of community support, and evidence of unserved status for project locations.

34. Plaintiffs identified multiple funding sources to support the project, including commitments from wireless carriers for fiber IRU purchases and long-term capacity leases totaling approximately $7.5 million, as well as access to debt financing if necessary.

35. On December 18, 2025, the Commission adopted Resolution T-17896 approving Plaintiffs' application and awarding a final grant amount of $37,571,833. (Exhibit 3 – Resolution T-17896).

36. The Commission issued an award letter to AVX on December 29, 2025, notifying Plaintiff of the approval and stating that the award is "predicated on AVX Networks / Digital Equity Foundation's agreement to construct its project as detailed in its application and comply with all guidelines, requirements, terms, and conditions set forth in the approving resolution," as well as Decision 22-04-055, Appendix A (FFA Program Rules), and all applicable federal and state statutes, rules, and regulations.

37. The award letter instructed Plaintiffs to complete and submit a Consent Form and taxpayer identification documents within 30 days.

38. Plaintiffs timely submitted the required Consent Form and taxpayer identification documents. (Exhibit 4 – Consent Form).

39. The project Start Date was December 18, 2025, the date of the approved resolution.

40. Following award approval, Plaintiff immediately commenced project activities, incurring substantial expenses for engineering, permitting, submarine surveys, CEQA review and regulatory and legal representation to engineer, permit, and begin constructing the approved infrastructure.

41. Because the project was not determined to be CEQA-exempt at the time of award, the project completion deadline is 24 months from the Start Date, or December 18, 2027.

**D. Plaintiffs' Expenditures and Reimbursement Request**

41. The Commission staff approved specific budgets for various categories of tangible items and activities.

42. All of the reimbursement requests submitted by AVX to Commission staff were within the categorically approved budgets, no process or procedure for additional approvals was ever provided.

43. As an example, Row 32 of the AVX's approved budget submission using the Commission's own required "Proposed Project Expenditures Estimated Direct Costs" spreadsheet contains a $400,000 allocation for "Fleet" vehicles.

44. The cost for a ruggedized pickup truck capable of operating in the rugged terrain of Catalina Island submitted for reimbursement is $91,000, well within the approved budget for vehicles.

45. As another example, Row 36 of AVX's approved budget submission to the Commission for real property in Avalon on Catalina Island to be used for an operations center is $2 million ("Land – Avalon Propety").

46. AVX requested reimbursement of $1.5 million for the purchase of a building located at 305 Sumner Avenue in Avalon ("Building").

47. Rows 8-13 authorizes $2.4 million for retrofitting or modifying the Building and fit out of equipment.

48. AVX estimated to staff that retrofitting and equipping the Building would cost between $1.27 million and $2.35 million, so these expenses fall within the authorized amount.

49. While the Building is in a residential area, it has been used for more than three years for business purposes, specifically the administrative office and network operations center for AVX.

50. The Building houses critical network infrastructure, including routers, switches, services, voice gear, and several antennas for backhaul and distribution in Avalon, as well as the Point of Presence ("POP") and Central Office ("CO") for AVX.

51. The island's only hospital and all of the fire alarm/life safety panels for the Santa Catalina Island Company are served from the Building.

52. In addition, the Termination Notice provides only cursory references to federal code sections rather than providing any analysis of why expense reimbursement documentation was purportedly insufficient. For example, the Termination Notice demanded engineering documentation demonstrating that a remote OLT was insufficient, yet the letter does not explain whether the FFA Award required such detailed technical justification.

53. The Termination Notice criticizes AVX for submitting a podcast describing real estate challenges on Catalina Island rather than formal engineering reports, but does not cite any rule specifying what type of documentation staff believed was required.

54. In response to prompting by Commission staff, AVX submitted on April 19, 2026 a reimbursement request for $2,559,284.03.

55. The requested reimbursement amount is below the standard 10 percent milestone, but AVX had requested permission to reduced-milestate reimbursement request, consistent with treatment of other FFA award recipients.

56. At no time did Commission staff object to AVX's reimbursement request on the basis that it was for an amount below the 10 percent milestone amount.

57. None of the requested reimbursements exceeded the categorical budgets established by Commission staff.

58. The reimbursement request was based on submitted receipts, invoices, payment receipts and other supporting documentation showing expenditures incurred for the project in accordance with the approved budget.

59. Federal regulations at 2 C.F.R. § 200.403 require adequate documentation of costs, and 2 C.F.R. § 200.404 requires costs to be reasonable.

60. On May 1, 2026, CPUC Communications Division sent an email notifying Plaintiffs that the invoices submitted raised concerns and directing Plaintiffs to stop all spending related to the FFA award until a review of the reasonableness and appropriateness of the expenses could be completed.

61. The May 1, 2026 email reminded Plaintiffs that FFA awardees must meet Capital Project Fund and CPUC criteria of allowable/eligible expenses in order to be reimbursed.

62. The May 1, 2026 email identified three expenses of particular concern: 1) the purchase of a ruggidized truck; 2) the purchase of a residential structure to serve as the operations center for the project and subsequently for the network; and 3) salaries for AVX's CEO and a family member.

63. On May 8, 2026, Communications Division sent a follow-up letter reiterating that the reimbursement request and supporting documentation raised concerns about some, but not all, of the requested reimbursements meeting the FFA criteria for allowable and reasonable expenses.

64. The May 8, 2026 letter specified additional information Plaintiffs must submit and reinforced that the project is under a stop work order.

65. Plaintiffs submitted a response on May 15, 2026.

66. Expenses for the three categories of costs to which the May 1, 2026 are reasonable under the definitions in 2 C.F.R. § 200.404 in particular because they reflect market prices and needs for the unique circumstances of Catalina Island. (2 C.F.R. § 200.404 (c)).

67. There are no vehicle repair shops on Catalina Island, which is situated 26 miles offshore from the California mainland.

68. If a vehicle requires repair, it must be sent to the California mainland on a barge – a costly and time-consuming process.

69. Therefore, AVX purchased a ruggedized truck that could withstand traveling on the rugged, unimproved roads of Catalina Island without damage.

70. Expenses for the three categories of costs to which the May 1, 2026 email and termination notice objected meet the requirement for 2 C.F.R. § 200.404(e) because they do not deviate from or exceed the CPUC's written approval for AVX's cost categories for those items.

71. Expenses for the three categories of costs to which the May 1, 2026 email and termination notice objected meet the requirement for allowable costs under 2 C.F.R. §2 C.F.R. § 200.403 in particular because they are necessary and reasonable and non-duplicative.

72. As one example, the termination notice faults AVX for purchasing a truck that has luxury trim and leather seats.

73. The reasonableness standard in 2 CFR 200.404, however, does not prohibit purchasing vehicles with features beyond the bare minimum required to perform work. It asks whether a prudent person would incur the cost under the circumstances.

74. AVX explained to staff in its response that the "luxury" features are standard on the ruggedized model of the truck purchased.

75.    There is no analysis in the termination notice explaining why purchasing a model that includes so-called "luxury" items is inconsistent with the "prudent person" standard in the federal rules, the Commission's FFA decision or the pre-approved amounts for vehicles included in the FFA Award.

**E.  Termination Without Process**

76.    On July 7, 2026, CPUC Communications Division Director Maria Isabel Ellis issued a letter titled "NOTICE OF TERMINATION" purporting to terminate the FFA award effective July 17, 2026.

77.    The termination notice stated that Communications Division "has determined that AVX Networks has not submitted adequate justification and documentation to support the reimbursement request" and denied the request without prejudice.

78.    The termination notice asserted that the reimbursement request failed to meet various federal requirements in 2 C.F.R. Part 200, including documentation standards (§ 200.403), reasonableness standards (§ 200.404), prior approval requirements (§ 200.439), procurement standards (§ 200.319), and cost allowability standards (§ 200.459).

79.    The termination notice does not systematically explain the elements of each standard or demonstrate how AVX's submissions fail to satisfy them.

80.    For example, the termination notice asserts that the purchase of the Building "fails to meet the reasonableness standards in the Code of Federal Regulations Part 200, Section 200.400" and "does not meet the reasonableness standards in CFR 200, Section 202.404."[1]

---

[1] The reference to "Section 202.404" appears to be a typographical error.  It likely is itended to reference Section 200.404.

81. The termination notice stated that Communications Division "does not make reimbursements for requests that do not provide adequate justification, prior approval, documentation, and meet federal and state program requirements."

82. The termination notice further stated that the letter "memorializes Communication Division's intention to formally begin the process to recommend rescinding the Federal Funding Account award pursuant to Section 17 of the Program Rules."

83. The purported termination was effected by staff notice alone, not by formal Commission decision or resolution.

84. On July 8, 2026, AVX representatives met with Defendant Ellis and Ian Culver, an attorney for the Commission, asking for further explanation of the basis for the purported termination of the FFA Award and asking for an opportunity to discuss the matter and cure any deficiencies.

85. Mr. Culver did not provide any additional detail about the purported deficiencies in the reimbursement request and indicated that a resolution might be prepared by staff for Commission review at some undetermined date in the future.

86. Plaintiffs received no ten-day written notice before termination as required by Section 17 of the FFA Program Rules.

87. Communications Division did not prepare a draft resolution for Commission approval recommending rescission of the award as required by Section 17 of the FFA Program Rules.

88. Plaintiffs received no specification of curable deficiencies with sufficient particularity to permit a meaningful response.

89. Plaintiffs received no opportunity to cure alleged deficiencies before termination.

90. The termination notice did not address Plaintiffs' right to contest the determination, did not provide a hearing process, and did not explain any appeal mechanism.

91. To date, Communications Division has not reimbursed any expenses, including expenses that were not questioned in the termination notice.

92. On information and belief, the Commission staff do not intend to move forward with reimbursement of any AVX expenses, even those for which staff did not raise an objection.

93. On information and belief, the Commission staff do not intend to withdraw the Termination Notice.

94. On information and belief, the Commission will redirect the $37,571,833 awarded to AVX to a different project if the AVX FFA Award is terminated, thereby harming AVX and residents and businesses on Catalina Island.

95. On information and belief, if the money cannot be re-directed, it will be reclaimed by the federal government, thereby depriving Californians of the benefit of federally funded broadband facilities.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violation of Procedural Due Process — Fourteenth Amendment

### (Against All Defendants)

96. Plaintiffs reallege and incorporate by reference paragraphs 1 through 95.

97. The Fourteenth Amendment to the United States Constitution prohibits states from depriving any person of property without due process of law.

98. The FFA award created a protected property interest in the grant funds because the rules for entitlement to FFA awards were set forth in federal code, California statue and a Commission decision. (*Nozzi v. Hous. Auth.*, 806 F.3d 1178 (9th Cir. 2015)).

COMPLAINT

14

99. Protected property interests are created by existing rules or understandings that stem from an independent source such as state law and that support claims of entitlement to benefits. (*Id.*; *Katzman v. L.A. Cty. Metro. Transp. Auth.*, 72 F. Supp. 3d 1091, 1100 (N.D. Cal. 2014)).

100. Here, multiple sources support a finding of entitlement: (a) the federal Treasury Final Rule and 31 C.F.R. Part 35 establish mandatory requirements for SLFRF fund administration; (b) California Public Utilities Code § 281 mandates that the CPUC implement the FFA program to connect unserved communities by federal deadlines and establishes objective eligibility criteria; (c) CPUC Decision 22-04-055 adopts detailed program rules specifying eligible areas, evaluation criteria, performance standards, payment procedures, and termination processes; and (d) the award itself followed a competitive application process with objective scoring criteria and was formally approved by Commission resolution.

101. Plaintiffs have a protected property right in public benefits when a statute authorizes those benefits and the implementing regulations greatly restrict the discretion of the people who administer those benefits. (*Nozzi,* 806 F.3d, at 1183).

102. The FFA Award was not discretionary but followed evaluation under specified criteria including matching funds, technology choice, type of partnership, pricing commitments, service to priority areas, and demonstration of capacity to execute the project.

103. The payment procedures establish mandatory payment milestones at 10%, 35%, 60%, 85%, and 100% completion based on submitted receipts and invoices, a structure closer to a federal grant agreement than a pure gratuity.

104. The combination of federal program requirements, state statutory mandates, detailed implementing regulations, competitive evaluation under objective criteria, and formal

award approval created a legitimate claim of entitlement to the grant funds upon compliance with program requirements.

105. The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319 (1976).

106. When a government-created property interest is at stake, due process principles require at least notice and an opportunity to respond in some manner before termination of that interest. *Raditch v. United States*, 929 F.2d 478, 480 (9th Cir. 1991).

107. The *Mathews v. Eldridge* three-factor test governs what process is due: (1) the private interest affected, (2) the risk of erroneous deprivation through the procedures used, and (3) the government's interest and the additional burden of additional procedures.

108. Plaintiffs' private interest is substantial. The $37.6 million grant represents critical funding for infrastructure serving over 1,100 unserved households, businesses or critical facilities on Catalina Island. Plaintiffs have incurred substantial expenses in reliance on the award. Termination deprives Plaintiffs not only of future grant payments but of reimbursement for already-incurred costs.

109. The risk of erroneous deprivation is high when termination is based on alleged documentation deficiencies without giving the grantee an opportunity to supplement or correct the record. The alleged grounds—lack of documentation or improper expense requests—are precisely the type of deficiency that can be cured if identified with specificity.

110. Decision 22-04-055 Section 17 itself contemplates notice and process before termination, requiring ten days' written notice and a formal Commission resolution.

111. The termination violated both federal due process and the CPUC's own adopted procedures by providing no ten-day written notice, no specification of deficiencies, no opportunity to cure, and no draft resolution for Commission approval.

112. At a minimum, due process required: (1) written notice specifying the alleged deficiencies with particularity; (2) an opportunity to respond in writing and submit supplemental documentation; (3) a reasonable cure period; and (4) a final decision by the Commission (not staff) after consideration of Plaintiff's response.

113. Defendants' failure to provide any of these protections violated Plaintiff's federal constitutional right to procedural due process.

114. As a direct and proximate result of Defendants' violation of Plaintiff's due process rights, Plaintiffs have suffered and continue to suffer damages including loss of grant funding, inability to complete the project, unreimbursed project expenses, lost opportunity costs, and other damages to be proven at trial.

## SECOND CAUSE OF ACTION

### 42 U.S.C. § 1983 — Deprivation of Property Without Due Process

### (Against Individual Defendants in Individual Capacity)

115. Plaintiff realleges and incorporates by reference paragraphs 1 through 114.

116. 42 U.S.C. § 1983 provides a cause of action against any person who, acting under color of state law, deprives another of rights, privileges, or immunities secured by the Constitution.

117. Defendants Maria Isabel Ellis acted under color of state law when terminating the FFA award.

118. Defendant Ellis' conduct deprived Plaintiff of property without due process of law in violation of the Fourteenth Amendment.

119. The right to notice and an opportunity to be heard before deprivation of a property interest is clearly established under *Mathews v. Eldridge* and its progeny.

120. Defendant Ellis terminated the award without any notice or process, violating clearly established due process rights.

121. Defendant Ellis is  not entitled to qualified immunity because the right to terminate an FFA award lies solely with the Commission, so the termination notice is an unauthorized act and because the right to due process before termination of a property interest was clearly established at the time of the termination notice.

122. As a direct and proximate result of Defendant Ellis' violation of Plaintiff's constitutional rights, Plaintiff has suffered damages including loss of grant funding, inability to complete the project, unreimbursed project expenses, reputational damage and other damages to be proven at trial.

**THIRD CAUSE OF ACTION**

**Violation of FFA Program Rules — CPUC Decision 22-04-055**

**(Against All Defendants)**

123. Plaintiff realleges and incorporates by reference paragraphs 1 through 122.

124. CPUC Decision 22-04-055 Section 17 establishes specific procedures for grant termination that were not followed.

125. Section 17 requires ten days' written notice before termination.

126. Section 17 limits grounds for termination to "fail[ure] to commence work at the agreed upon time" or "not following the project plan in a reasonable manner."

127. Section 17 requires that the termination decision be made by the Commission, not staff: "the Commission, upon ten days written notice to the FFA recipient, reserves the right to terminate the award."

128. Section 17 requires that "Communications Division Staff will notify the applicant of intent to prepare for Commission approval, a draft resolution that would rescind a FFA grant due to nonperformance."

129. These provisions make clear that: (1) ten days' written notice is required before termination; (2) termination requires a formal Commission resolution; and (3) staff must prepare a draft resolution for Commission approval rather than terminating unilaterally.

130. The alleged termination was effected by staff notice alone, not by formal Commission decision or resolution.

131. The Commission staff did not prepare and Plaintiff did not receive a ten-day written notice before termination.

132. Communications Division did not prepare a draft resolution for Commission approval.

133. The termination violated the mandatory procedures in Decision 22-04-055 and exceeded staff's delegated authority.

134. The termination is void because it did not comply with the mandatory procedures adopted by the Commission.

135. Plaintiff is entitled to declaratory relief that the termination is void and that the award remains in effect.

136. Plaintiff is entitled to injunctive relief compelling Defendants to comply with the procedural requirements of Decision 22-04-055 before any future termination action.

**FOURTH CAUSE OF ACTION**

**Violation of Federal SLFRF Requirements — 31 C.F.R. Part 35**

**(Against All Defendants)**

137. Plaintiff realleges and incorporates by reference paragraphs 1 through 136.

138. The FFA program is funded by the American Rescue Plan Act and subject to the U.S. Treasury Department's Final Rule at 31 C.F.R. Part 35.

139. California Public Utilities Code § 281(n) requires the CPUC to implement the FFA program "consistent with Part 35 of Title 31 of the Code of Federal Regulations and any conditions or guidelines applicable to these one-time federal infrastructure moneys."

140. 31 C.F.R. Part 35 requires recipients to ensure that SLFRF funds are spent in accordance with applicable federal requirements.

141. Federal administrative requirements in 2 C.F.R. Part 200 require written notice and opportunity to cure before termination of federal awards. (See e.g. 2 C.F.R. § 200.340).

142. To the extent the CPUC acts as a pass-through entity distributing SLFRF funds to subrecipients, it must comply with federal administrative requirements including notice and opportunity to cure.

104. Termination without notice or opportunity to cure violated these federal mandates.

143. Defendants' termination was inconsistent with Part 35 of Title 31 of the Code of Federal Regulations and violated California Public Utilities Code § 281(n).

144. Plaintiff is entitled to declaratory relief that the termination violated federal requirements and is therefore void.

145. Plaintiff is entitled to injunctive relief compelling Defendants to comply with federal SLFRF requirements.

**FIFTH CAUSE OF ACTION**

**Declaratory Relief — Award Remains in Effect**

**(Against All Defendants)**

146. Plaintiff realleges and incorporates by reference paragraphs 1 through 145.

147. An actual controversy exists between Plaintiff and Defendants regarding whether the FFA award remains in effect.

148.    Defendants assert that the award has been terminated.

149.    Plaintiff contends that the purported termination is void because it violated mandatory procedural requirements in Decision 22-04-055, federal due process, and federal SLFRF requirements.

150.    Plaintiffs seek a declaration that:

   **a.** The FFA award remains in effect;

   **b.** The purported termination is void for failure to comply with Decision 22-04-055 Section 17;

   **c.** The purported termination violated Plaintiffs' federal constitutional right to due process;

   **d.** The purported termination violated federal SLFRF requirements at 31 C.F.R. Part 35 and 2 C.F.R. Part 200;

   **e.** Only the Commission, acting through formal resolution or decision, has authority to terminate an FFA award;

   **f.** Any future termination requires compliance with the procedural protections in Decision 22-04-055 Section 17, including ten days' written notice, specification of deficiencies, opportunity to cure, and formal Commission resolution;

   **g.** Plaintiffs are entitled to reimbursement of documented project expenses upon compliance with program requirements.

151.    A declaration is necessary and appropriate to resolve the controversy and provide certainty regarding the parties' rights and obligations.

**SIXTH CAUSE OF ACTION**

**Breach of Contract / Breach of Grant Agreement**

**(Against CPUC)**

152.    Plaintiff realleges and incorporates by reference paragraphs 1 through 151.

153.    The FFA Award was granted after a competitive process.

154. The FFA Award created a bilateral contract or grant agreement between Plaintiff and the CPUC.

155. The FFA Award letter states that the award is "predicated on AVX Networks / Digital Equity Foundation's agreement to construct its project as detailed in its application and comply with all guidelines, requirements, terms, and conditions set forth in the approving resolution."

156. Plaintiffs executed the Consent Form agreeing to the terms of the award and the program rules.

157. The conduct of the parties—formal application, evaluation under objective criteria, Commission approval by resolution, execution of consent form, incurrence of expenses, and submission of documentation for reimbursement—evidences mutual intent to be bound.

158. Even if the award is not a formal written contract, it creates an implied-in-fact contract under which Plaintiffs agreed to perform (deploy broadband infrastructure meeting program requirements) and CPUC agreed to reimburse documented expenses upon satisfactory performance.

159. The CPUC had statutory authority to enter into such agreements under Public Utilities Code § 281 and Decision 22-04-055.

160. Plaintiffs have performed their obligations under the contract by submitting a compliant application, executing the Consent Form, commencing project work, incurring expenses, and submitting documentation for reimbursement.

161. The CPUC breached the contract by terminating the award without the notice, opportunity to cure, and formal Commission decision required by the contract terms incorporated from Decision 22-04-055 Section 17.

162. The CPUC further breached by failing to reimburse documented expenses, including expenses that were not questioned in the termination notice.

163. As a direct and proximate result of the CPUC's breach, Plaintiffs have suffered damages including loss of grant funding, inability to complete the project, unreimbursed project expenses, lost opportunity costs, and other damages to be proven at trial.

## SEVENTH CAUSE OF ACTION

### Promissory Estoppel (Against CPUC)

164. Plaintiff realleges and incorporates by reference paragraphs 1 through 163.

165. The CPUC made a clear promise to Plaintiff: approval of $37,571,833 in grant funding to reimburse documented project expenses upon compliance with program requirements.

166. The award letter and Resolution T-17896 memorialized this promise.

167. Plaintiff reasonably relied on the promise by incurring substantial expenses to commence the project, including engineering, permitting, equipment procurement, and construction activities.

168. The reliance was reasonable and foreseeable—the program contemplates that grantees will begin work immediately to meet the December 31, 2026 expenditure deadline.

169. Plaintiff's detriment is substantial: expenses incurred without reimbursement, plus opportunity costs and lost alternative funding.

170. Injustice can be avoided only by enforcement of the promise.

171. This case does not involve circumventing statutory procedures—the award was approved through the formal procedures established in Decision 22-04-055, including application, evaluation, and Commission resolution.

172. Applying promissory estoppel is necessary to avoid injustice. Plaintiffs incurred expenses in reasonable reliance on a formal, publicly adopted Commission resolution.

COMPLAINT

23

Allowing the CPUC to terminate without process or reimbursement after inducing reliance would work a manifest injustice.

173. The promise in Resolution T-17689 was not a staff representation but a formal Commission resolution—the highest form of Commission action and the only manner in which the Commission speaks formally.

174. As a direct and proximate result of the CPUC's breach of its promise, Plaintiff has suffered damages including unreimbursed project expenses, lost opportunity costs, and other damages to be proven at trial.

## EIGHTH CAUSE OF ACTION

### Reimbursement of Undisputed Expenses

### (Against All Defendants)

175. Plaintiff realleges and incorporates by reference paragraphs 1 through 174.

176. The FFA payment procedures require the CPUC to reimburse grantees for documented, incurred expenses at specified completion milestones.

177. Payment requests must include receipts, invoices, and supporting documentation.

178. Commission staff reviews requests to verify amounts and ensure expenditures are consistent with the approved budget.

179. Nothing in the program rules authorizes staff to withhold payment for undisputed expenses as a penalty for alleged deficiencies in other documentation.

180. Plaintiff submitted documentation for expenses in the April 19, 2026 reimbursement request.

181. The termination notice questioned certain categories of expenses but did not question all submitted expenses.

182. To the extent certain expenses are not questioned or disputed, those expenses should be reimbursed even if other expenses are under review.

183. Wholesale denial of all reimbursement is punitive and inconsistent with the reimbursement-upon-documentation structure of the program.

184. Plaintiff is entitled to immediate reimbursement of all expenses for which adequate documentation has been submitted and which staff has not identified as deficient.

185. Blanket denial of all reimbursement is arbitrary and capricious.

**VI.  PRAYER FOR RELIEF**

WHEREFORE, Plaintiff AVX Networks respectfully requests that this Court:

1. **Declare** that the FFA award approved by CPUC Resolution T-17896 remains in effect;

2. **Declare** that the purported termination effected by the July 7, 2026 staff notice is void for failure to comply with CPUC Decision 22-04-055 and Section 17;

3. **Declare** that the purported termination violated Plaintiffs' federal constitutional right to procedural due process under the Fourteenth Amendment;

4. **Declare** that the purported termination violated federal SLFRF requirements at 31 C.F.R. Part 35 and 2 C.F.R. Part 200;

5. **Declare** that only the Commission, acting through formal resolution or decision, has authority to terminate an FFA award, and that any staff-level termination is ultra vires and void;

6. **Declare** that any future termination requires compliance with the procedural protections in CPUC Decision 22-04-055 Section 17, including ten days' written notice specifying deficiencies with particularity, opportunity to respond and cure, and formal Commission resolution adopted after consideration of the grantee's response;

7. **Declare** that Plaintiffs are entitled to reimbursement of undisputed documented project expenses;

8. **Declare** that Plaintiff is entitled to an opportunity to cure alleged insufficient documentation for project expenses;

9.    **Issue a preliminary injunction** and permanent injunction based on the violation of federal FFA rules and the Commission's own FFA rules:

a.  Reinstating the FFA award;

b.  Enjoining Defendants from enforcing or giving effect to the purported termination;

c.  Requiring Defendants to comply with CPUC Decision 22-04-055 Section 17 before any future termination action;

d.  Requiring Defendants to process and pay undisputed expenses submitted by Plaintiff for reimbursement;

e. Requiring Defendants to provide Plaintiff with an opportunity to cure any alleged deficiencies in its reimbursement request submitted to the Commission;

f. Enjoining Defendants from terminating the award without ten days' written notice, specification of curable deficiencies, opportunity to cure, and formal Commission resolution;

9.    **Award compensatory damages** against Defendant Ellis in her  individual capacity for violation of Plaintiffs' constitutional rights under 42 U.S.C. § 1983, in an amount to be proven at trial;

10.    **Award compensatory damages** for breach of contract, including:

a.  Unreimbursed project expenses incurred in reasonable reliance on the award;

b.  Costs of delayed project activities and costs to replace vendors and contractors no longer available;

c.  Other damages to be proven at trial;

11.    **Award Plaintiffs their costs of suit**, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

12.    **Grant such other and further relief** as this Court deems just and proper.

---

**Dated:** July 13, 2026

COMPLAINT

Respectfully submitted,

/s/Anita Taff-Rice

iCommLaw
Anita Taff-Rice, Esq.
1547 Palos Verdes, # 298
Walnut Creek, CA  94597
Tel.: (415) 699-7885
Email: anita@icommlaw.com
*Attorneys for Plaintiff AVX*
*Networks*

**VERIFICATION OF COMPLAINT**

I, Lance Ware, hereby declare and confirm the following:

1. I am the Chief Executive Officer of AVX Networks, the Plaintiff in the above-entitled action.

2. I have read the foregoing Complaint and know the contents thereof.

3. The contents of the Complaint are true to the best of my own knowledge, except as to those matters which are therein stated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 13, 2026.

_____
Lance Ware